Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 The plaintiff in error was demandant below in a writ of entry, in which he claimed about eight acres of land in the city of Lowell.
 

 The demandant claimed under Benjamin Melvin, who, it is admitted, was seized of the land in dispute, as part of a larger tract, in 1782. One undivided moiety of this tract Melvin held in right of his wife, and the other in his own right.
 

 The tenants claimed under a mortgage given by Benjamin Melvin and wife to Jacob Kittredge, on the 27th day of April, 1782. In 1789, Kittredge entered under his mortgage, and leased the premises to Melvin. In 1796, Kittredge recovered the possession from Melvin on an action of ejectment, and had possession delivered to him by writ of
 
 habere facias.
 

 From that time Kittredge and those claiming under him, now represented by the tenants or defendants in this action, claim to have had the peaceable possession of the demanded premises; and there is no evidence of any occupation by Melvin or his heirs, or claim thereto, till 1832, although they lived in the immediate neighbourhood. On the trial below, the ten-r ants relied on two grounds of defence, both of which they claim to have established by the evidence: —
 

 
 *288
 
 1. That the demanded premises were included in the.mortgage given by Melvin and wife to. Kittredge, in 1782.
 

 2. That even if the land in controversy was not embraced within the deed of mortgage, yet that the entry of Kittredge in 1796, and the ouster of Melvin and wife, operated as a disseizin, and that by the uninterrupted and adverse possession of the tenants, and those under whom they claim,-for more than thirty years before the entry of demandant, or those under whom he claims, his right of entry was barred by the statute of Massachusetts of 1786, ch. 13,,sec. 4; which limits the right of any person under no disability to make an entry into lands, <fcc., to twenty years next after his right or title first descended or accrued, with a saving to femes covert, &c., of a
 
 right to
 
 make such entry at any time within ten .years after the expiration of said twenty years, and not afterwards.
 

 The court gave “full instructions to the jury” on the principles of law applicable to the complicated facts and somewhat contradictory testimony submitted to them on- the trial; to certain portions of which the demandant’s counsel excepted, and has here assigned as error.
 

 We shall proceed to examine them in their order.
 

 I. “ That if the jury believed from the evidence, looking to the monuments, length of lines, and quantities, actual occupation, &c., that it was more probable the parties to the mortgage of 17S2 intended to include therein the demanded premises than otherwise, they should return, their verdict for the tenants.”
 

 It is objected to this instruction, that it submits the construction of the deed to the jury; and permits them to conjecture the probable intention of the parties from facts and circumstances. not contained in the deed. Whereas the intention of the parties is to be found,in their -deed alone, which it is the duty of the court to construe.
 

 Taking this sentence of the charge as it stands, without reference to the facts of the case, it may be admitted that it affords some color to this objection. But when we look to the issue submitted to the jury, and the testimony exhibited by the record, the exception will he seen to be without foundation.
 

 It is true, that it was the duty of the court to give a construction to the deed in question, so far as .the intention of the parties could be elicited
 
 therefrom,
 
 and we are bound, to presume that, in the “ full instructions ” which the record states were “ given to the jury,” and not contained in the bill, because no objection was made to them, the court performed that duty correctly. .But after all this is done, it is still a question
 
 *289
 
 of fact to be discovered from evidence dehors the deed, whether the lines, monuments, and boundaries called for irfclude the premises in controversy or not. A deed may be vague, ambiguous, and uncertain in its description • of boundary ; and even when it carefully sets forth the lines and monuments, disputes often occur as to where those lines and monuments are situated on the ground ; and it necessarily becomes a fact for the jury to decide, whether the land in controversy is included therein, or, in other words, was
 
 intended
 
 by the parties so to be.'
 

 The mortgage referred to by the court describes the,land as'follows : — “ A certain tract or parcel of land lying and being in Chelmsford, on Chélmsford Neck, so called, in said county of Middlesex, containing by estimation one hundred acres, be the same more or less,.lying altogether in one piece without any division, except only one county bridle-road, which runs through the northerly part of said farm or tract of land, and'being a part of the real estate of Mr. Thomas Fletcher, late of said Chelmsford, deceased.”
 

 The description of the land conveyed by this deed is of the most vague and indefinite character; it sets forth no monuments to indicate the line which divides it from the remainder of the tract owned by the mortgagor, and not intended to be included in the deed.
 

 Hence, the demandant; in order to show what land was intended by the parties to be included, produced witnesses to prove the existence in former times of another
 
 “
 
 bridle road,” which he contended was the southern boundary of the mortgaged land, because a hundred acres lay north -'of this road, and the land was described as intersected but by “
 
 one
 
 county bridle-road,” which ran through the northerly pqrt of the farm. He produced a witness, also, to prove that Kittredge, the grantee, had pointed out a certain monument near this road as marking his boundary.
 

 The tenants contended that the deed was uncertain as to quantity, and did not call for the road as its southern boundary. They also gave evidence to show the actual practical location by the parties of the land included in the mortgage, as early as 1789, which included the eight acres in controversy. For this purpose they produced the léases from Kittredge to Melvin, the mortgagor, dated in 1789 and 1793, and' subsequently to the other tenants of Kittredge, setting forth courses and distances which included the demanded premises, as they contended, and proved by witnesses a possession held accordingly since'1796.
 

 It cannot be doubted, that, where a deed is indefinite, uncertain, or ambiguous in the description of the boundaries of the
 
 *290
 
 land conveyed, the construction given by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary be clearly shown. The difficulty in the application of the descriptive portion of a deed to external objects, usually arises from what is called a latent ambiguity, which has its origin in parol testimony, and must necessarily be solved in the same way. It therefore becomes a question to be decided by a jury, what was the intention of the parties to the deed.
 

 From this view of the case, as exhibited by the record, it clearly appears that the question, whether the demanded premises were included within the limits of the mortgage, or intended so to be, was submitted by the parties, and by the nature of the case, to the jury ; and that, in order to a correct decision of the issue, the jury should be instructed to weigh the testimony as to the “ monuments, length of lines, and quantitiés, actual occupation, &c.,” and decide according to the weight of evidence. And such is the meaning, and no more, of the language of the court now under consideration. We can perceive no error in it.
 

 II. The second matter of exception is to the instruction, — “ That the verdict of a former jury, introduced by the tenants, was not evidence to control this case or the issue.”
 

 On the trial, the tenants gave in evidence the record of a former writ of entry, brought by Benjamin Melvin, Jr., against them in 1833, for this same land, on which a judgment was rendered in favor of the tenants. In the trial of that case, the question had been submitted to the jury “ whether the demanded premises were intended by the parties to be conveyed by the deed of mortgage,” and the verdict was in favor of demandant ; the court, nevertheless, on other points reserved, gave judgment for the tenants.
 

 We understand the principle asserted by the court in this instruction to be, that this verdict in favor of Melvin was not conclusive upon the defendants in this suit, and did not operate by way of estoppel as to the facts stated therein.
 

 The correctness of this instruction cannot be questioned. For, assuming that a verdict.and judgment in a writ of
 
 entry sur disseizin
 
 to be conclusive between parties and privies in Massachusetts, and that they operate by way of estoppel, yet the record in this case would have no such effect; —1st. Because it was neither pleaded nor given in evidence by the demandant for that purpose. 2d. All estoppels are mutual; the demandant was not party to the shit, nor privy except as to one fourteenth of the premises, and would not therefore have been
 
 *291
 
 estopped as to the remainder; so, neither could the tenants. 3d. There was no judgment of the court upon the verdict, which alone could give it the force or effect of
 
 res judicata.
 

 III. The third exception is to, an instruction in favor of the demandant, — and ought not • to have been taken, or urged here.
 

 IV. The fourth, fifth, sixth, and seventh instructions excepted to have reference to the statute of limitations, and may be considered together. They are as follows: —
 

 “ 4th: That if the tenants, under their respective leases from Kittredge, occupied and cultivated to the Tyler line, in such a manner as the owners of such land would ordinarily occupy and cultivate, and such an occupation had continued for the period of thirty years, it would constitute such an adverse possession as would bar the demandant’s right to recover.
 

 “5th; That the possession of the premises by said lessees, under the lease, was the possession of Kittredge, the lessor, and his- heirs, he claiming to have a deed which included them, and having turned Melvin out of possession; if it was of such a character as amounted to a disseizin, it would in law inure to the benefit of Kittredge and his heirs, and would be the disseizin and adverse possession of the lessor.
 

 “6th. That if the possession of Cheever and Thissell, in 1796, under Kittredge, included the demanded premises, and the same possessiQn had been continued by the subsequent lessees, as the evidence tended to show it had been, down to the entry of the heirs of Melvin and wife, in 1832, it constituted in law such a. continuity of possession as would bar the demandant’s right to recover.
 

 “ 7th. That there was evidence, not contradicted, of a claim to the premises by Mrs. Kittredge, after the death of her husband, and of rents being paid to her; but if Mrs. Kittredge, after the death of her husband, forgetting she had signed the original deed, claimed said premises, and received the rent therefor by mistake, till the heirs or their guardians discdvered she had signed the deed, and the rents were then settled with them, the continuity of adverse possession would not thereby be disturbed; but there was no evidence of those rents which were paid to Mrs. Kittredge going to the heirs, or being repaid to. them, except what is to be inferred from her will, and the tenants recognizing the title of the heirs of Kittredge after the widow’s death, and taking deeds of them. That, on the death of Kittredge, his rights descended to his heirs at law, some of whom were minors ; that they became entitled to them, and the rents and profits paid by the lessees; that if the tenants,
 
 *292
 
 who held, leases from Jacob Kittredge, and entered under them, remained in possession after his death, they should properly in law be regarded as tenants holding at will, or by sufferance of or under his heirs; and if the tenants saw fit, for any part of the time, to pay rent to Mrs. Kittredge, the mother, or did it by mistake, and afterwards paid it to the heirs, or their guardians, and took deeds from them, such payments to her ought not to impair the rights of the heirs, or those claiming under them ;■ but the whole transaction was evidence to be weighed by the jury of a continued occupation by the lessees, for and in behalf of those entitled in law to the rights which Kittredge claimed when alive.” .
 

 We can perceive no error in these instructions, when taken in connection with the evidence exhibited by the record.
 

 It cannot be denied, that an adverse possession may be kept up without a personal residence where tíre disseizor gives leases to tenants, puts them in possession, and receives the rents, claiming the land as his own.
 

 The law is also well settled by the courts of Massachusetts, that the entry of a married woman is barred by the statute of limitations of that State, after thirty, years, notwithstanding her coverture. Also that by the marriage.' the husband and wife become jointly seized of her real estate in her right, and their title must be so stated in pleading; ' and therefore, if a stranger enters and ousts them, it is a disseizin of both, and a right of entry immediately accrues to both or either of them. (See Melvin
 
 v.
 
 Proprietors, &c., 16 Pick. 161; also 5 Metcalf, 15
 
 ;
 
 and cases there cited).
 

 Nor can we discover any thing in' the evidence in this case, that could éntitle the-.demandant to maintain that .the continuity of the adverse possession has.been broken'by the death of Kittredge, and the fact that the widow may have received the rents without objection for some time after his death.
 

 -.There.was' no abatement by a stranger after the death of Kittredge, nor entry or disseizin of his heirs' by the widow.
 

 “.If a guardian by-nurture riipkes a lease by indenture to one who is already in under-title of the infant, rendering rent to the guardian, which is paid accordingly, this is no disseizin ; for there is no actual ouster consequent on such demise, and the rent paid to the guardian must be accounted for to the infant.” (Roll. Abr. 659; Bac. Abr., tit.
 
 Disseizin,
 
 A.)
 

 So if- the mother, by mistake of her rights, and without objection, receives the rents jointly due to herself and children ; this constitutes no ouster of them, she being liable to account to them-
 

 
 *293
 
 ' The judgment of the Circuit Court is therefore''affirmed, with costs.
 

 Order.
 

 This cause came on to. be heard on the transcript of the record from the Circuit Court of the United'States for the District of Massachusetts, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.