CATO and wife vs. STEWART.

DEEDS: *Ambiguity of, how explained.*

Where a deed is ambiguous as to the *quantity* and *interest* intended to be conveyed, it presents a question of law to be determined by the court, but where the *locus* of the property is called in question by a suggestion outside of the instrument of conveyance, it is compe-tent to introduce parol evidence to identify it.

APPEAL from *Arkansas* Circuit Court.
Hon. HENRY B. MORSE, Circuit Judge.
*Pindalls,* for appellants.
*Rose & Green,* for appellee.

STEPHENSON, J. The Catos, who are the minor children and heirs-at-law of Amos Cato, deceased, sue by their next

friend, Edward Johnson, for the possession of certain lands in Arkansas county, described as the S. ½ S. W. ¼ sec. 26, and S. E. ¼ S. E. ¼ sec. 27, T. 3 S., R. 6 W.

The defendant interposed a general denial, and at the March term of the Arkansas circuit court, the cause went to trial, the court sitting as a jury.

The plaintiffs introduced as evidence the certificate of the swamp land agent that the lands had been duly purchased from the state by their father.

Mrs. Rebecca Cato testified that she was the widow of Amos Cato, deceased, and that the plaintiffs were his children and only living heirs at his death, and the lands sued for were the only lands deceased owned, at his death, in Arkansas county.

D. S. Morris testified that the rental value of the lands per year was one hundred dollars.

The defendant then introduced and read from the records the following order:

"In the matter of the estate of Amos Cato, deceased. Now, on this day comes Rebecca Cato, by Whittemore, her attorney, and presents to the court here her petition asking the court to turn over to her the property belonging to said estate, said estate consisting of one hundred and twenty acres of land, unimproved, lying on Bayou Meto, whereupon come D. S. Morris, Robert A. Young and W. T. Wells, and, after being duly sworn as the law directs, appraised said land to be worth the sum of one hundred and fifty dollars. It is therefore ordered by the court, that said estate be and the same is hereby turned over and vested in the widow of the said Amos Cato (the said Rebecca Cato), during her life time."

Defendant offered to read a deed from Rebecca Cato to Benjamin H. Nobles of the lands here sued for, but the court refused to admit the deed in evidence.

Defendant offered to prove by Rebecca Cato that she had sold the land to Nobles, which the court refused.

The plaintiffs then offered to prove by Rebecca Cato that she did not employ Whittemore to procure the order from the probate court, and that she neither desired such an order, nor knew that it had been made until the commencement of this suit, and that Whittemore was not, nor ever had been her attorney, which the court refused.

The court found the following facts: That, in 1860, Amos Cato entered the land in controversy; that he is dead, and that plaintiffs are his children and only heirs at law; that Rebecca Cato, his widow, by Whittemore her attorney, made an application to the probate court, on the —— day of ——, 1867, to have 120 acres of land set apart to her, under sec. 3, ch. 4 of Gould's Digest, and that said probate court did, by an order entered of record, set apart and vest in said Rebecca, widow of Amos Cato, deceased, 120 acres of land, and that it was the same land involved in this suit, and that the defendant was in possession.

The court declared the law to be that " the probate court had jurisdiction of the subject matter and the parties; that said order divested the right to the possession of said land from the plaintiffs and vested it in the said Rebecca, and that the plaintiffs cannot recover."

Judgment for defendant.

The bill of exceptions presents a long array of objections to the rulings, finding and judgment of the court, but we deem it material to notice the following only :

Did the court err in admitting in evidence the order of the probate court vesting the land in Rebecca Cato?

Did it err in admitting the evidence of Rebecca Cato to prove what land her husband owned at his death, to show that the 120 acres of land mentioned in the order of the probate court was the same land involved in this suit?

Did the court err in refusing to admit the testimony of Rebecca Cato to prove that she never employed Whittemore to procure the order from the probate court?

The order of the court is based upon the 3d section of chapter 4, Gould's Digest, and is a substantial compliance with its formal requirements. It must be presumed, for the purpose of this case that, upon the filing of Rebecca Cato's petition to have the estate of her deceased husband vested in her, the court satisfied itself that said estate was of the character or class contemplated by the statute; that being true, it had no other duty to perform than to take the steps pointed out by the law to invest the widow with the title to the property.

It is insisted, secondly, that the court erred in admitting the testimony of Rebecca Cato to prove that the 120 acres of land, described in the deed, is the same land for the possession of which the suit was brought.

It will be observed, by reference to the order of the probate court, that the land is somewhat loosely described. Rebecca Cato files her petition to have the property belonging to the estate of her husband vested in her "said estate, consisting of 120 acres of land unimproved, lying on Bayou Meto." "It is therefore ordered by the court that said estate be and the same is hereby turned over and vested in the widow," etc.

This order was Mrs. Cato's title to the land, and is subject to the same rules of construction as a deed, so far as the words descriptive of the property are concerned.

What was meant by the language used was a question of law, to be construed by the court, and presents what is termed a latent ambiguity. The *quantity* and *interest* intended to be conveyed by a deed must be determined by the court alone, but it frequently occurs, as in this case, that the *locus* of the property is called in question by a suggestion outside the in-

strument of conveyance, in which case it is competent to in-troduce parol evidence to identify it.  It was the duty of the court in this case to ascertain what land was meant to be vested in Mrs. Cato if it was possible from the language used to ascertain that fact, then upon the suggestion that the land sued for was not the same so vested, oral testimony could be introduced to explain the ambiguity.

A reasonable construction of the order, so far as it relates to the description of the land is as follows:  One hundred and twenty acres of unimproved land lying on Boyou Meto, the same being the entire estate of Amos Cato, deceased.

From the order, the court has no difficulty in ascertaining the *quantity* of and *interest* in the estate which passed to Mrs. Cato, but to learn *where* it is, the judge, sitting as a jury, must place himself in the position of the probate court at the time it made the order, and if, by the aid of extrinsic cotemporary facts he can locate 120 acres of land belonging to the estate of Amos Cato, deceased, on Bayou Meto, he has a solution of the ques-tion.  The plaintiffs sue for a certain tract of land described by the numbers of the legal subdivisions according to the sur-vey.  The defendant interposes a title to land differently de-scribed.  The description in either deed is sufficient to pass the title.  The instruments, themselves, do not disclose the fact that the land described in each is identical; resort must, necessarily, be had to proof *aliunde*.

The testimony of Mrs. Cato was of the highest importance to the proper solution of the controversy on this point, and is decisive of it.  She swears that the land in controversy is the only land which her husband had in this county when he died, and the court, sitting as a jury, might well conclude from this testimony, and the order of the probate court, that the lands sued for and those embraced in the order were identical.  1 Greenlf. Ev., secs. 284–293; *Reed v. Props. Locks and Canals,*

8 How., 274; *Bell v. Woodward*, 46 N. H., 315; *Jackson v. Moore*, 6 Cow., 722; *Gerrish v. Towne*, 3 Gray, 86; *Fitch v. Miller*, 20 Cal., 352.

The plaintiffs, in order to destroy the force of this outstanding title from Mrs. Cato, attempt to introduce proof to show that the order was obtained by one Whittemore, without the authority, knowledge or consent of Mrs. C. That the judgment of a court of competent jurisdiction cannot be thus collaterally attacked has been so often decided by this and other courts, that a citation of authorities, or a reaffirmance of that principle we deem unnecessary. If the plaintiffs desire to test the regularity of the proceedings of the probate court, they must adopt another form of action on the other side of the court. We have already seen that the proceedings were not void on their face, and we must presume, for the purposes of this case, that the court had jurisdiction.

The judgment is, in all things, affirmed.