Brown, District Judge.
The libel was.filed to recover the value of 1,348 bushels of oats, which, it is alleged, were not delivered out of a quantity of 8,989 bushels, alleged to have been loaded upon the canal boat Daniel Burns on December 8, 1891. The libel states that the quantity missing “was sold and delivered by the master without orders from the libelant,” and that the canal boat was “under charter to the libelant for transportation of the oats from Hoboken, N. J., to such point or points in the harbor of New York as might thereafter be ordered.”
The proof is scarcely satisfactory as to the actual quantity loaded upon the canal boat. What was put upon the boat was put in from cars, which had been weighed and measured upon different days previous to the loading. The weigher could give no testimony as to the amount on either of the cars. The weight he testified to was obtained, as he said, by the addition of the weights on the several cars together. He testified positively to this aggregate; but he could give no items; he did not remember them without his memoranda; and his memoranda though called for, were not produced. There was no proof as respects the custody of the cars, or of the grain, between the time when they were measured and the time when they were unloaded upon the boat; and hence no proof that all of it went upon the boat. There was no proof of any abstraction of grain from the boat, nor of any improper delivery without orders of the libelant. 7,641 bushels were admitted to have been delivered in three different deliveries; but there was no proof of the actual measurement of the quantity delivered, or that the amount taken by the libelant’s vendee did not exceed that quantity. I should hardly be satisfied to render any decree for the libelant upon such evidence, if in other respects the libel could be sustained.
. But upon the proof as to the hiring of the boat, I do not think the facts show that either the Burns or her owner was liable for a mere deficiency of grain found on unloading. There was no charter of the *160 boat in the ordinary sense. The boat was merely hired by the libelant, in accordance with a very common practice, for an indefinite time, at the rate of two dollars a day, for use by libelant in storing or carrying its grain about the harbor; that price to be paid for each day that any cargo was aboard. The boat, so far as respects loading and unloading, her navigation, and the delivery of cargo, was to be subject wholly to the orders and control of the libelant. The price of two dollars per day included a man, who was called a captain, who stayed upon the boat, and whose business it was to attend to her and keep her pumped out as necessary. But this man had nothing to do with the loading, trimming, or unloading of the cargo, nor with the navigation of the boat; and the canal boat had no motive power of her own. Whatever navigation there was, was to be done exclusively by the libelant. When any cargo was to be delivered, the libelant would cause it to be towed; and the cargo, or-so much of it as might be sold, would be transported by the libelant to the place where the buyer wished to remove it. The boat was loaded by the libelant on the 8th of December. The first delivery was of about one third of the oats on the following 27th of December; the next, on January 25th; and the last, on February 25th. Upon the evidence in the case the most that can be said, even if there was sufficient proof of the loading of 8,989 bushels and of the delivery by libelant’s orders of only 7,639, that there is a discrepancy of 1,315 bushels between the intake and the outgo, without any explanation of how the discrepancy occurred. But the proof does not show that the loss, if any, occurred by any fault of the boat, or of her owner.
It is plain that the boat was not a common carrier. She had none of the duties of a carrier to perform. „ It is equally plain that the owner, in letting her out in the way above stated, did not take on himself any of the duties of carrier, or of a warehouseman. The contract amounted simply to a bailment of the boat by the owner to the libelant for its use in receiving the grain, with the privilege to the company, either to use the boat simply for storage, or to move her about the harbor as the company pleased, from place to place, for the sale and delivery of such grain as the libelant might choose to put on board, the claimant simply supplying a man to take care of the boat, without any duties as regards the cargo or navigation.
In all the cases cited by the libelant, the boat receiving the cargo has received it under some contract to transport it, and has had the rights, and has owed to the libelant the duties, of a carrier. The E. M. Mc-Chensey, 8 Ben, 150; Coal & Iron Co. v. Huntley, 2 C. P. Div. 464; Leary v. U. S., 14 Wall. 607; Richardson v. Winsor, 3 Cliff. 395. In the present case no such duties rested upon the claimant or upon the canal boat. The only duty of the claimant to the libelant was to furnish a proper man to look after the care of the boat itself, and there is no evidence that the man failed in this duty. The claimant was neither carrier nor warehouseman. He never took on himself the duties of either, and never assumed or contracted to assume any responsibility as respects the cargo.
*161 The boat was in legal effect delivered to the libelant. The libelant, in putting its grain on the boat, did not part with the possession of the grain, nor deliver it to the boat owner. On the contrary, the boat was delivered to the libelant, and was legally in its possession, custody, and control. The libelant was owner pro hac vice. The claimant was not liable for the boatman’s willful torts or crimes, if any had been proved. Scarff v. Metcalf, 107 N. Y. 217, 13 N. E. Rep. 796.
The libel is dismissed, with costs.