TERRY & TENCH CO., Inc., v. MERRITT & CHAPMAN DERRICK & WRECKING CO.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

No. 182.

SHIPPING (§ 58*)—CHARTERS—INJURY TO VESSEL—LIABILITY OF CHARTERER.
    In a suit to recover for injury to a derrick chartered by libelant to respondent, and which sank while in the exclusive possession and control of respondent, the burden rested upon respondent, as bailee in possession, in order to avoid liability, to show how the injury occurred and that it was free from negligence.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 239; Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Southern District of New York.

* Marsh, Winslow & Wever, for appellant.

  Wing, Putnam & Burlingham (Henry E. Mattison, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This was a libel in personam to recover damages for injuries sustained by a derrick belonging to the libelant while in the possession of the respondent as a charterer. The following is a summary of the undisputed facts.

In August, 1906, the libelant chartered its derrick to the respondent. About a week later she was found to be leaking and was returned to the libelant for repairs. She was sent to a dry dock and repaired, and was returned to the respondent on September 14th, and was used by it and in its exclusive possession until September 20th, when the accident occurred. On the afternoon of that day she was loaded with stone at Weehawken, N. J., and was made fast alongside the respondent's tug, which started across the Hudson river. When about two-thirds across the river the derrick listed to starboard, capsized, and sank. After hearing the evidence the District Judge said, in substance, that she was sunk without known cause, resorted to a presumption that she was unseaworthy, and dismissed the libel.

This case is similar to the recent case of Swenson v. Snare & Triest Co., 160 Fed. 459, 87 C. C. A. 443. In that case this court said:

"This was a libel in personam to recover damages for the loss of a pile driver which occurred in the East River in July, 1905. It is admitted that the pile driver was chartered by the respondent from the libelant, and that while in the exclusive possession of the respondent it sank and was lost. As such an occurrence is not in the ordinary course of things, the burden was thrown on the respondent, as a bailee, to show how the loss took place and that it was not caused by its negligence."

These principles are applicable here. The vessel having been injured while in the exclusive possession of the respondent, as bailee, the burden is upon it to show:

(1) How the injury occurred.

(2) That it was free from negligence.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The respondent did show the circumstances of the accident, but offered no evidence to show the cause of the sinking of the vessel, and, to rebut the presumption against it, relied upon the presumption of unseaworthiness arising from the sinking of the vessel without apparent cause. The presumption of unseaworthiness generally arises in insurance cases, where a vessel is in the possession of the insured, and where means of knowledge concerning the condition of the vessel are available to him, rather than to the insurer. But where a vessel is in the exclusive possession of a charterer, means of knowledge are as readily available to him as to the owner, and we perceive no especial reason why there should be any presumption in the matter. We deem it unnecessary to decide this question, however, as we are of the opinion that, if the presumption of unseaworthiness exists in the case, the libelant rebutted it by its proof concerning the condition of the vessel before and after the accident. In our opinion the respondent failed to sustain the burden of proof imposed upon it as a bailee in possession, and the decree was erroneous.

The decree of the District Court is reversed, with costs, and the case is remanded, with instructions to enter a decree in favor of the libelant, in the usual form, for its damages and costs.

NOTE.—The following is the opinion of Adams, District Judge, in the court below:

ADAMS, District Judge. This action was brought by the Terry & Tench Company to recover from the Merritt & Chapman Derrick & Wrecking Company the damage caused to derrick No. 7 by her sinking.

The respondent denies that there is any ground of recovery and states that the derrick was unseaworthy. It alleges that after the cargo had been properly loaded and stowed No. 7 sprang a leak and leaked so badly as to show that she was unseaworthy. That was before this occurrence, however, and the respondent notified libellant of the defective condition of the vessel and she was accordingly returned by them as unsafe and unseaworthy; that the respondent was thereafter informed by libellant that the derrick had been caulked and otherwise repaired so as to render her safe and seaworthy and thereupon the respondent took the derrick back into its service on September 14, but that the repairs were deficient and that she was in an unseaworthy condition.

The respondent alleges that about the 18th day of September the derrick was engaged at the West Shore Railroad, Weehawken, to load a cargo of limestone, which was loaded with due care by the master—the stone being placed one tier deep on deck with only a few blocks on top, the entire load weighing about three hundred gross tons; that thereafter the tug William E. Chapman took No. 7 in tow and with the lighter fast to the steamer's starboard side proceeded towards New York; that the wind at the time was southeast; that there was a short choppy sea, light rain and flood tide; that the derrick No. 7 lay on an even keel, was properly manned and to all appearances in proper condition to tow; that out in the river the lighter listed to starboard, dumped its cargo and capsized.

The determination of this case turns upon the question whether, or not, the derrick was seaworthy. Of course if she was not seaworthy that was the libellant's fault and there can be no recovery. But it is contended that when the derrick was taken back by the libellant for the purpose of repair that she was thoroughly caulked and was in fact seaworthy then and remained so and they are unable to suggest any cause for this sinking.

The respondent contends that the cause of the sinking is that the derrick continued unseaworthy, that she was in fact unseaworthy all the time and particularly so because the libellant did not caulk the seams up as far as they

should towards the deck, that the top sides were practically in some places leaky and defective. That is the problem to be solved.

The law is reasonably well settled now since the late decision of the Circuit Court of Appeals in Swenson v. The Snare & Triest Company, 160 Fed. 459, 87 C. C. A. 443. That is a case very similar to the present one. The claim there was for loss of a pile driver which occurred in the East River in July, 1906. The Circuit Court of Appeals said: "It is admitted that the pile driver was chartered by the respondent from the libellant and that while in the exclusive possession of the respondent it sank and was lost."

Those facts are quite similar to those in this case except in that case, as I remember, the man who was on board and in charge, as is customary in chartering boats around New York Harbor, was still in the pay of the owner. In this case the master of the derrick, who was in charge, at the time of this occurrence was and had been for some little time before in the employ of the respondent, so that the owner had no one on board the vessel representing him.

I recur to the opinion which says: "As such an occurrence is not in the ordinary course of things, the burden was thrown on the respondent as bailee to show how the loss took place and that it was not caused by negligence." And further the Court said: "We need not go so far as the District Judge, it is sufficient for us to say that we have carefully examined the whole record, and in view of the findings of the Trial Court, are unable to hold that the respondent has sustained the burden of proof imposed upon it by law."

The question here is, Has the respondent sustained the burden of proof to show how this loss occurred? It refers to the familiar doctrine that where a vessel sinks without any apparent cause she is to be deemed unseaworthy when she started on the voyage. No one here has been able to state what the cause of this sinking was and I am a good deal in doubt about it myself. The testimony leaves me in doubt. I thought at one time it might have been caused possibly by overloading, but the testimony seems to exclude any such theory as that. The master of the derrick said he had carried larger loads on her than was put upon her this time, or quite as large, and nothing happened to her. If she was not overloaded—and I do not think that the testimony warrants any such conclusion—the question is how did this occurrence take place. No one has been able to give any direct explanation.

The libellant has maintained that the burden of showing the unseaworthiness of the boat has not been sustained. That the derrick had been repaired after her first return; whether she was fully repaired or not, is not by any means clear. She started out on this trip in tow of a tug that is not over powerful—although it has been contended that she is—a tug whose engine and power for a boat of that size is less than usual. She started out and went across the Hudson River making a sort of circle and when she got pretty well over on the New York side her lines suddenly began to "crack," I think the Captain of the tug called it, and in a few seconds they broke and the derrick went over capsizing her load. The derrick was subsequently saved but with a loss of her load.

It is an extremely difficult case to decide. Without the presumption which has just been adverted to, it is almost impossible to say how this loss occurred. The derrick was apparently made seaworthy after she was repaired; she went to work again and carried her loads safely—one load I think previous to this although it did not weigh as much, she carried that load safely and was apparently in a fair condition for work. On this occasion she was loaded rather deeper than she had been before—I do not think it could be said she was overloaded but she had more of a load on than on the first occasion and that exposed these seams, which it is claimed were not caulked, to the effect of the water.

I am unable to say how this loss occurred unless it was through some defective seams in the upper part of the boat. She met with nothing on the trip to cause her to capsize. It is true that she had a man aboard that was inexperienced but it does not appear that he did anything negligent, or failed to do anything which an ordinary man ought to do. His companion was not on the derrick at the time of the occurrence but had gone on board the tug. I am unable, as I said a few minutes ago, to determine how this accident hap-

pened if it were not that the vessel was unseaworthy. It has been shown here that there was a lot of cement used to strengthen the seams and to cover some worm holes. While there is no evidence to show that such use of cement was open to criticism in any way yet it is rather significant that such a method had to be resorted to to make the boat apparently seaworthy. It has been argued here, and I think truly, that wooden boats ordinarily are not aided by cement. We all know that the seams of iron and steel boats have to be made tight in that way but wooden boats are ordinarily supposed to be able to have their seams made tight by caulking without the aid of cement. I am somewhat in doubt as to exactly where the seams were in which the cement was used. I think it was shown it was used on the bottom of the boat. The fact, however, that after the accident she was still able to be used with satisfaction seems to preclude the idea of the bottom seams having opened or being worm eaten. Still, this boat sunk without any known cause and the only thing that the Court can do is to resort to such presumption as the law affords to aid it in determining a cause for the accident. The law says if a boat sinks without apparent cause she is to be deemed unseaworthy and I feel forced to come to that conclusion in this case, and I shall dismiss the libel on the ground that the boat was unseaworthy.