### BERNSTEIN v. MORSE.

(District Court, D. Maine. November 3, 1919.)

No. 508.

1. ADMIRALTY ⟨⫘⟩60—DETERMINATION OF NATURE OF ACTION FROM WHOLE LIBEL.
Whether a case in admiralty is ex contractu or ex delicto is to be determined from an examination of the allegations of the whole libel, and not alone from its opening statement.

2. SHIPPING ⟨⫘⟩58(2)—BURDEN OF PROOF IN ACTION AGAINST BAILEE OF SHIP.
While it is the general rule that, in an action ex delicto, the libelant has the burden of proving negligence, yet where a scow was injured while in the exclusive possession of respondent as bailee, the burden was on respondent to show how the injury occurred, and that he was free from negligence.

3. SHIPPING ⟨⫘⟩42—IMPLIED WARRANTY BY CHARTER OF VESSEL.
The letting of a ship for a specific purpose is an assurance amounting to a warranty that she is sufficient for the use for which she is devoted; for by general admiralty law a ship must be satisfactory and competent for the sort of cargo and particular service in which she is engaged.

4. SHIPPING ⟨⫘⟩54—NEGLIGENCE IN FOUNDERING OF SCOW.
Respondent, to whom libelant chartered a mud scow for carrying lumber, held, under the circumstances, not guilty of negligence, so as to be

---

⟨⫘⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

liable for the sinking of the scow, which, though it was loaded by careful stevedores, listed and sank.

5. SHIPPING ⬤⇒54—CARE BY CHARTERER OF SUNKEN VESSEL.

Respondent, who chartered a mud scow for. transportation of lumber, *held* not guilty of negligence in caring for the scow after it had listed and sank; it appearing that respondent sent for a schooner on which it was proposed to transship the lumber, but the coming of the schooner was delayed, due to fog, and in the meantime respondent made no effort to raft the lumber from the scow.

In Admiralty. Libel by Levi Bernstein against John A. Morse. Libel dismissed.

Emery G. Wilson and Nathan W. Thompson, both of Portland, Me., for libelant.

Edward W. Wheeler, of Brunswick, Me., for respondent.

HALE, District Judge. The libelant alleges that he is the owner of a large scow, which he chartered to the respondent, to load and carry lumber from Portland to Bath, and from Bath to Portland and Harpswell, Me. He declares the libel to be "in a cause of contract civil and maritime." He does not, however, allege a breach of the contract, but proceeds to state a case in tort. He says that, after making the charter, the respondent took possession of the scow and proceeded to Harpswell with her, where he loaded her with a large cargo of lumber, made her fast alongside the end of his pier at Great Island, where she was "allowed to ground out at low water, and owing to the great weight of the lumber and the uneven bottom on which she grounded, said scow was badly strained and otherwise injured, so that she filled and sank." The libel further alleges that "by reason of the negligent way in which said respondent handled said scow the libelant has lost use of her, and is entitled to a reasonable compensation for such loss and for damages"; further, that certain sums are due to the libelant .for the damage, loss, and demurrage "sustained through the fault and negligence of said respondent and its agent, and not through any fault or negligence on the part of the libelant." The libel does not allege that the respondent has failed to meet his contract obligation. Its averments, on which issue had been joined, are those of negligence.

[1] The libelant's case rests, and has proceeded, on his allegations of negligence. The mere description of a case as one for breach of contract is not conclusive. Whether a case in admiralty is ex contractu or ex delicto is to be determined from an examination of the allegations of the whole libel, and not alone from its opening statement. Dittmar v. Frederick Star Contracting Co., 249 Fed. 437, 439, 162 C. C. A. 3. The libelant's proofs also have proceeded on the theory that a. case ex delicto is before the court. The libelant contends in his brief that he has shown a case of negligence. He urges that the proofs should lead me to find that the respondent was the charterer of the scow and had exclusive possession of her; .that, while in such possession, he was guilty of negligence, in that he took the scow to a dock at Great Island, Harpswell, and loaded her too heav-

ily on the offshore side, and then, instead of discharging any of the lumber, or trying to find out the trouble with the scow, when she began to list, he piled lumber on her inboard side, thus trying to right her up; that, when on an even keel, he left the scow overnight without any one to watch her, or to keep her pumped out, in case she started to list again; that during the night she rolled over and filled; that she grounded out at low water; and that the damage was caused by the respondent's negligent loading, by his carelessly allowing the scow to remain on a rough and uneven bottom, with a large cargo aboard, and by his further negligence in failing to take care of her after she sunk; that, instead of taking means to get the lumber off the scow immediately, by rafting, or in some other direct manner, the respondent attempted to notify the schooner Lizzie J. Call, which was then chartered by him and was discharging her cargo at Bath, and to get the schooner to Great Island for the purpose of taking the lumber off the scow and putting it on the schooner; that, while making this delay, a heavy fog set in, and the scow was compelled to stay in its sunken condition with a large amount of lumber aboard; that she grounded at low water on a hard, uneven bottom, and was thereby strained and damaged, and also suffered a loss in the nature of demurrage.

There is a sharp conflict in the proofs. Nearly all the witnesses were before me, and I had the opportunity of noting their appearance and of giving them some personal examination.

[2] The general rule is that, in an action ex delicto, the libelant has the burden of proving negligence on the part of the respondent. In the case at bar, the scow was under a charter to the respondent and was in his exclusive possession. In Terry & Tench Co., Inc., v. Merritt & Chapman D. & W. Co., 168 Fed. 533, 93 C. C. A. 613, Judge Noyes, in speaking for the Court of Appeals for the Second Circuit, applied the rule that, "where a ship is injured while in the exclusive possession of a bailee, the burden is upon such bailee to show: (1) How the injury occurred; (2) that it was free from negligence."

I will assume that this rule may be applied in the case before me. This gives the libelant the benefit of the rule which would have prevailed, if he had alleged a breach of contract and a failure to return the scow in good condition at the end of the charter term. In that case the burden would have been upon the respondent to show justification for such breach.

Has the respondent met this burden of proving himself free from fault under the rule I have stated?

[3, 4] The scow is 97 feet long, 27 feet wide, and 9 feet 4 inches from her deck to her bottom; she has four pockets amidships. Each pocket is about 18 feet wide, 21 feet long, is V-shaped, and has a coaming about it. Her accustomed use had been that of a mud scow.

The respondent had manufactured certain lumber into box boards, which he had sold to the Bath Box Company, to be delivered on its wharf at Bath. He had the schooner Lizzie J. Call under charter, capable of carrying about 150,000 feet of lumber. He went to the

libelant for the purpose of hiring another schooner, to be used in connection with the Call, so that one could be loading while the other was discharging. The libelant told him he had no schooner at his command, but he had a scow fitted to carry lumber, and which he would let to him. A study of the whole evidence induces me to find that the libelant assured Morse of the scow's capacity to safely carry at least 200,000 to 250,000 feet of lumber. The charter party was executed, and the libelant delivered the scow in person to the respondent at Great Island, and turned it over to Brown, the respondent's foreman, who has to have charge of loading the lumber. Brown had experience as a stevedore, but had never loaded a scow like this, having V-shaped pockets in the center opening to dump the mud into the sea. The proofs lead me to believe that the libelant indicated to Brown how much of a load could be placed on board, and how deep the scow could be loaded, showing him a bolt on the side of the scow, below the deck, and telling him that he could load it down to that mark. It appears that the loading was done by a crew of competent men under the direction of Brown, who put sticks across the V-shaped pockets and put lumber in them, according to the suggestions he had received from the libelant. Brown says:

"They started in at the bottom, and put those across and filled the pockets; got it up to the hatch covering."

The proofs show that, after 115,000 feet of lumber had been placed on board, a list to port was noticed; the scow being then in deep water and not aground. The crew then adjusted the load and balanced it upon the scow. They left her in good trim, and upon an even keel, for the night, with 115,000 feet of lumber on board. It would undoubtedly have been an act of extra precaution if the respondent's agents had left a watchman upon the scow overnight; but, in view of the fact that the libelant had told the respondent that the scow would carry something more than twice the amount then loaded upon her, and that the lumber then upon her did not bring the scow down to within a foot of the mark to which the libelant assured Brown she might be loaded, I cannot hold that it was negligent for Brown and his crew to assume that the listing had been due to an unevenness in the load, that they had corrected such listing, and that they might safely leave the scow in the ordinary manner, overnight, without a watchman.

Taking all the circumstances into consideration, I think that, with reference to loading the vessel, and also in leaving her overnight, they acted with the care of reasonably prudent men.

During the night the scow sank. I am induced by the proofs to find that the primary fault, which must be held to be the cause of the resulting damage, was the fault of the libelant in letting to the respondent a scow, unsuitable for the purpose for which it was chartered, in that she was built, and was suitable only, for carrying mud in her hold, and not for carrying a deckload of lumber. She listed in the night, in the current, and, being topheavy, she filled over the hatches and sank. I cannot find that it was a case of grounding.

She had been let for use in carrying lumber, both in the hold and on deck; and it appears that lumber was put in the hold, in so far as possible, for extra ballast. I am not satisfied that any negligence is shown in loading the scow. The full weight of the testimony is clearly to the effect that the damage was occasioned, not by the improper loading of the scow, but by the primary fault that she was not a suitable vessel on which to pile a bulky, heavy deckload.

The libel alleges that the scow, at the time of the making of the charter, was "in every way fitted for the business in which she was engaged." The evidence negatives this allegation; within the proper meaning of the term, the scow was not seaworthy; she was not fitted for the purpose for which she was let. By the general maritime law a ship must be fit and "competent for the sort of cargo and the particular service in which she is engaged." Kent's Commentaries, 205; The Regulus (D. C.) 18 Fed. 380, 382; Sumner v. Caswell (D. C.) 20 Fed. 249. And the letting of a ship for a specific purpose is held to be an assurance amounting to a warranty that she is sufficient for the use to which she is to be devoted. The New York (D. C.) 93 Fed. 495, 497; The Thames, 61 Fed. 1014, 10 C. C. A. 232; Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012.

[5] A further question of negligence is presented by the proofs, involving a more difficult question of fact: Was the respondent guilty of negligence in his care of the scow after she had sunk? For, even though the libelant was responsible for the scow's sinking, still the respondent, in taking care of her, was under the duty to exercise the care of a reasonably prudent man, under all the circumstances of the case. I think the proofs show that the best course to be pursued, after the vessel sunk, was to put her cargo upon another vessel as soon as possible, and then raise the scow. The respondent undertook this course. Immediately after finding that the scow had sunk, he endeavored to get a tugboat from Portland to go to Bath, take the schooner Lizzie J. Call in tow, and go to the relief of the scow; but he could not at once secure such tugboat. He succeeded in hunting up the tug Seguin, then in the Kennebec river, and arranged for her to start at once. A dense fog set in, and prevented the schooner from being towed to Great Island. During the continuance of the fog Capt. Haley, of the tug, remained in the river waiting for clear weather. There is some testimony of mariners that, in an emergency, it would have been prudent to start with the schooner, even in a fog; but there is not enough to satisfy me that this was the safe course to pursue. I think the delay was caused by the conditions of the weather over which the respondent had no control.

The libelant urges that it was fault on the part of the respondent to depend upon getting the schooner to Great Island to take off the lumber, when the lumber could have been rafted, or put ashore, up an incline, and then loaded upon another vessel, or could have been otherwise taken care of.

The respondent was called upon to act in a crisis. I think it was reasonable for him to apprehend loss if he tried to raft the lumber in the current at Ewing's Narrows, and that he had reason to decide

that it would be very difficult to get the boards back, up a long incline, to the shore. But whether or not the libelant took the best course, under the circumstances, as the event proved, the testimony convinces me that he acted intelligently, reasonably, competently, and in good faith; and that he was prevented from success by weather conditions beyond his control. He is not, then, chargeable for the delay in getting the schooner to take the lumber from the scow.

Upon full consideration of the proofs, I am constrained to find that the respondent has met the burden of showing that he was free from negligence; and that the fault which occasioned the injury was that of the libelant in undertaking to charter a mud scow to be used for the purpose of carrying a heavy deckload of lumber; that such scow was not fit for the use for which she was chartered; in other words, she was not seaworthy, within the meaning of the maritime law. I am led to this conclusion by the whole current of the testimony.

A suggestion has been made that some liability arises from the fact that the respondent was a marine insurer for the sum of $4,000. It is enough to say that this point is not brought before me by the pleadings.

The result is that the libel must be dismissed. A decree may therefore be drawn dismissing the libel. Under the circumstances, however, my further order is that the respondent shall not recover costs against the libelant.