**O'BRIEN BROS., Inc., v. CITY OF NEW YORK et al.**

(Circuit Court of Appeals, Second Circuit. November 9, 1925.)

No. 69.

1. Shipping ⟨⟩54—Owner of chartered scow held responsible only for master's negligence.

Owner of scow chartered to city *held* responsible only for negligence of master, who was but a caretaker, though he was sent out in owner's pay; letting of scow constituting demise, which made charterer bailee.

2. Shipping ⟨⟩54—Loading of scow held not duty, of scowmaster, but obligation of city chartering it.

Loading of scow, chartered to city under agreement making it responsible for damages thereto by negligence of its servants, agents, or contractors, *held* not determinable by scowmaster, and city was liable for its loading contractor's negligence.

3. Shipping ⟨⟩54—Sinking of scow held due to misplacement of load by charterer's contractor.

Sinking of seaworthy scow in calm weather on clear night or early in morning, while moored, *held* due to misplacement of load by contractor employed by city, chartering scow.

4. Shipping ⟨⟩54—Duty of loading contractor to exercise care to render load stable.

It was duty of city's contractor, in loading scow chartered by city, to exercise care to render load stable.

5. Shipping ⟨⟩54—That method of loading resulting in sinking of scow was theretofore pursued by charterer without such result no defense.

That method of loading scow, which was upset and sunk by splitting of load, had been theretofore pursued by city chartering it, or that loads frequently split without such result, *held* no defense to libel by owner.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by O'Brien Bros., Inc., against the City of New York and Michael Santangelo. Decree dismissing the libel. Libelant appeals. Reversed.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

George P. Nicholson, Corporation Counsel, of New York City (Charles J. Carroll, of Brooklyn, N. Y., of counsel), for appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The libelant's scow White Light was chartered to

the city of New York on March 3, 1921, under an agreement which provided for pay at the rate of $12 per day, the owner furnishing the captain, and which made the city of New York responsible for damages caused to the scow by the fault or negligence of any of its employees, servants, agents or contractors. The scow was loaded at the Canal Street dump at New York City with ashes, boxes, rubber and city rubbish. The material was loaded on the scow as it came and then spread by trimmers. When the load was 15 or 20 feet high, the master stopped the loading, but later, before his request was heeded, two additional loads were added. There was testimony that the customary method of loading scows with materials such as were being loaded was to place the ashes at the bottom of the pile, with the lighter materials above; otherwise, there was danger of splitting the load. After being loaded, the White Light was towed, with two other scows, into Port Ivory, landing there at about 9 o'clock on the night of November 16, 1921. The White Light was placed between two scows, the innermost of which was tied to the mooring spiles. At about 10 o'clock that night the master of the scow noticed that the load was beginning to split a little in the middle. The White Light had not been leaking and there was no water in her. The master of the scow went to sleep, but was awakened at about 2 o'clock in the morning by a cat, which had leaped upon his face. He then found that there was water in the room, and went on deck and found the load on the port side was coming over, sliding down continuously, and she was listing to port. She took in water through the port hatch. There was no water in the scow down below, and such water as was coming in was coming over the deck. It gradually grew worse, the lines to the next scow parted, and the outer boat floated away; and the White Light slid out, careening to port and then to starboard, dumping her load, and, having filled through the hatches, she sank.

The answer filed to the libel admitted that the scow was deemed in the possession and employment of the city of New York, and that she had possession and control of her at the time of the sinking. It was admitted that a cargo was loaded by the respondent's (city of New York) contractor, the respondent Santangelo. The charter did not contain a covenant to return in good condition. [1, 2] The master was but a caretaker, and, even though such master was sent out in the pay of the owner, the letting of the scow con-

stituted a demise, and made the charterer, the city of New York, the bailee. Under these circumstances, the owner is responsible only for the negligence of the master of the scow. Dailey v. Carroll, 248 F. 466, 160 C. C. A. 476. The city of New York agreed to be responsible for the negligence of its contractor. The negligence in loading the scow was an obligation which was assumed by the city of New York. The scow was in the custody of the city of New York, and the improper loading of the scow was due to the fault of the contractor. The work of loading the scow was an obligation assumed by the city. It was not a matter to be determined by the scow master. Hastorf Contracting Co. v. Ocean Transportation Co. (C. C. A.) 4 F. (2d) 584. The obligation of the owner was to furnish a seaworthy vessel, and the obligation of the charterer was to exercise reasonable care in loading her. The scow master's duty was to care for the mooring of the scow, to watch her lines and the necessary pumping. Daniel Burns (D. C.) 52 F. 160.

[3, 4] We held in Terry & Tench Co. v. Merritt Wrecking Co., 168 F. 533, 93 C. C. A. 613, that, where a vessel was injured while in the exclusive possession of a respondent as bailee, such bailee must show how the injury occurred and to establish that it was free from negligence, and the charterer's negligence is presumed in the absence of explanation. See, also, Schoonmaker-Connors Co. v. Lambert Transp. Co. (C. C. A.) 268 F. 104. This scow having sunk in calm weather, on a clear night or early morning, and proven to have been seaworthy, the inference is irresistible that the accident was due to the misplacement of the load. The Adah, 258 F. 377, 169 C. C. A. 393. There is convincing testimony in this record that, if the heavy material had been put at the bottom and the light at the top, the load would have stayed there, and to mix it up, putting ashes and paper all through, a little movement would cause it to shift. The city inspector admitted this, and it was admitted that rubbish could be separated, and the ashes could be placed so as to form a solid foundation. It was the duty of the city's contractor, in loading the scow, to exercise care to render the load stable. Jova Brick Works v. City of New York (C. C. A.) 277 F. 180. The method pursued in loading the vessel, the appearance of the crack the night before the sinking, all point with unerring certainty to the cause of the sinking of the scow. The city had control of the loading and selecting the berthing. The instability of the load was due to the manner of loading the scow.

[5] It is no answer to say that this method of loading was theretofore pursued by the city, or the fact that loads had frequently split before without upsetting scows. It is not important. The negligence consists in the loading of heavy ashes above lighter materials and causing an unstable load. This eventuated in the sliding of the load and the listing of the scow, and its eventual sinking. There was nothing that the scow master could do, or that he failed to do, which in any way contributed to the sinking of the scow.

The contractor, the appellee Santangelo, is primarily liable as contractor. He defaulted, and an order was entered noting his default. Since the city of New York in its contract agreed to be responsible for any negligence of its contractors, libelant is entitled to a decree against both respondents.

Decree reversed.