1006

## THE DRIFTER. THE WHITE CITY. STEVENS v. SIMPSON et al.

District Court, S. D. New York. August 28, 1929.

Neil P. Cullom, of New York City (James E. Freehill, of New York City, of counsel), for libelant.

Florence J. Sullivan, of New York City, for claimant.

WOOLSEY, District Judge. My decision in this case is for the libelant..

At about 9:30 a. m. on October 19, 1925, the yacht Drifter, a 55-foot motorboat, which had just been completed at the yard of the Consolidated Shipbuilding Corporation at Morris Heights, was there delivered to the White City, in pursuance of an arrangement made between the owners of the two vessels, through authorized agents, to be towed to the Transmarine Pier at Port Newark, N. J., where the Drifter was to be shipped on board an ocean-going steamship Suscalanco. There

was also delivered to the White City at the same time a cradle, in which the Drifter was to be stowed on the Suscalanco's deck.

The libel herein, which sounds in contract, alleges that the Drifter and her cradle were delivered to the White City in good condition at Morris Heights, and were delivered by the White City at Port Newark in a damaged condition.

The answer pleads res judicata, and alleges that the Drifter and her cradle were delivered at Port Newark in the same good condition as when they were received, and that the damage to them, if any, occurred after they had been delivered by the White City to employees of the Transmarine Company there.

The plea of res judicata is based on the fact that there had been a litigation in the Municipal Court, Borough of Manhattan, City of New York, First District, which had been transferred to and tried in the Seventh District, in which William Stevens, the libelant here, as assignee of Frost, had originally commenced an action against Alexander Simpson, the father of Herbert N. Simpson, and had subsequently made the claimants, Herbert N. Simpson and William A. Rhodes, the owners of the White City, parties thereto.

The issues between the plaintiff and Herbert N. Simpson and William A. Rhodes in the Municipal Court case seems to have been susbtantially the same as they are here. The reason it is claimed that the previous litigation is res adjudicata, and should be a bar to this proceeding in rem, is that the complaint in the Municipal Court in the Seventh District was dismissed without costs as to Herbert N. Simpson and William A. Rhodes.

The claimant's counsel sought to prove his plea of res adjudicata by introducing into the evidence a copy of a printed form, captioned with the title of the Municipal Court case, above referred to, and duly certified by the clerk of the Municipal Court for the Seventh District.

█ This document has printed, opposite the box containing the title of the case, the word "Verdict." In the body of the document it is recorded that the case was tried on December 7 and 8, 1926, before Mr. Justice Joseph R. Davies and a jury, that the jury disagreed, and that the case was "dismisssed without costs as to the defendants, Herbert N. Simpson and William A. Rhodes."

I find that this notation on this document, though somewhat inaptly entered on it, merely records a decision by Mr. Justice Davies dismissing the complaint as against Simpson and Rhodes at the trial, in which the jury

disagreed as to the liability of Alexander Simpson. I find, therefore, that there is not any proof that any judgment was entered dismissing the case as against Simpson and Rhodes.

It is well settled that the decision or opinion of a court or the verdict of a jury does not make a matter res judicata. In order to secure that result, a judgment must be entered. Reed v. Proprietors of Locks, etc., on Merrimac River, 8 How. 274, 290, 291, 12 L. Ed. 1077; Smith v. McCool, 16 Wall. 560, 561, 21 L. Ed. 324; King v. Chase, 15 N. H. 14, 41 Am. Dec. 675; Lorillard v. Clyde, 99 N. Y. 196, 200, 1 N. E. 614; Springer v. Bien, 128 N. Y. 99, 102, 27 N. E. 1076.

The claimants have failed, therefore, to sustain their plea in bar of res judicata, and it becomes necessary to pass to the merits of the case. The facts in their essentials are simple, and it is unnecessary to discuss the evidence in detail.

The Drifter and her cradle, which had been delivered to the White City in good condition at Morris Heights on the morning of October 19, 1925, were towed down the East River, across the Upper Bay, and through the Kill van Kull. In the late afternoon, when the flotilla was off Bayonne, the Suscalanco, on which the Drifter and her cradle were to be shipped, was met, bound for sea.

The captain of the White City, Rhodes, decided to go ashore and telephone for instructions. He put into Fisher's Dock, Bayonne, and, having received instructions that the Drifter could be shipped by a later steamer, decided to spend the night where he was and proceed to Port Newark in the morning.

There is some conflict between the evidence given by the witnesses for the libelant and the claimant Simpson, as to what happened at the Transmarine Dock. Rhodes is dead, so I have not the benefit of his story. I believe the libelant's witnesses that the Drifter and the cradle were damaged when they arrived, that a receipt was given to Rhodes, one of the claimants here, now dead, reciting the damage, that he accepted this without protest; and that neither Rhodes nor Simpson could explain when, how, or where the damage happened. The owners of the White City became bailees of the Drifter and her cradle on their delivery to the White City at Morris Heights. Doherty v. Pennsylvania Railroad Co. (C. C. A.) 269 F. 959, 962, and cases there cited.

When, as bailee, a towing vessel receives her tow in good condition and delivers it damaged, without being able to explain the damage, there is a presumption of negligence on her part, and she must be held liable. This principle has been repeatedly enforced in cases of bailment arising under charter parties. Swenson v. Snare & Triest Co. (C. C. A.) 160 F. 459; Terry & Tench Co., Inc., v. Merritt & Chapman Derrick & Wrecking Co. (C. C. A.) 168 F. 533; Dailey v. Carroll (C. C. A.) 248 F. 466; O'Brien Bros. v. City of New York (C. C. A.) 9 F.(2d) 542, 543.

An interlocutory decree for the libelant may therefore be presented to me for signature. The libelant may have its costs on entry of final decree.